UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

___

DOROTHY A. CRAWLEY-NUNEZ,

                         Plaintiff,

                                                       DECISION AND ORDER
           v.                                                08-CV-0295-A

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                         Defendant.

___

## **INTRODUCTION**

        Plaintiff Dorothy Crawley-Nunez brings this action pursuant to 42 U.S.C. § 405(g), claiming that the defendant, Michael Astrue, the Commissioner of Social Security (the "Commissioner"), improperly denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") as provided for in Titles II and XVI of the Social Security Act. The plaintiff claims to be disabled as a result of bilateral knee degeneration, obesity, depression, breast cysts, and lower back pain. (R. 18-19). The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), on grounds that the Administrative Law Judge's ("ALJ") decision was supported by substantial evidence in the record and is based upon the application of the correct legal standards. The plaintiff also cross-moves for judgment on the pleadings, alleging

that the Commissioner's determination is erroneous and that she was and continues to be disabled. For the reasons stated herein, the Court finds that the plaintiff is not entitled to benefits because substantial evidence supports the ALJ's determination that she is not disabled within the meaning of the Social Security Act. Therefore, the ALJ's decision is affirmed.

## **BACKGROUND**

The plaintiff, Dorothy Crawley-Nunez, applied for DIB and SSI on December 9, 2004, alleging her disability began on January 1, 2003. (R. 44, 295).[1] Her application was denied by ALJ Timothy M. McGuan on August 28, 2006. (R. 308-17). The Appeals Council remanded the case back to the ALJ on March 9, 2007, directing the ALJ to give consideration to the opinion of the examining source, to further evaluate plaintiff's subjective complaints and her obesity, and to obtain evidence from a vocational expert. (R. 332-35).

Another hearing was held before the ALJ on August 15, 2007, at which the plaintiff and an impartial vocational expert ("VE"), Jay Steinbrenner, testified. (R. 359-406). On September 5, 2007, ALJ McGuan found that the plaintiff had not been disabled at any time since her alleged onset date of January 1, 2003. (R. 12-26). When the Appeals Council denied the plaintiff's

---

[1] "R." refers to the administrative record filed by the Commissioner as part of his answer.

request for review, the plaintiff then commenced this action on April 17, 2008. (R. 6-9). The Commissioner filed a motion for judgment on the pleadings on November 6, 2008, and the plaintiff cross-moved for judgment on the pleadings on January 12, 2009.

The plaintiff was born on January 12, 1962, and was therefore forty-five years old on the date of ALJ McGuan's decision. (R. 363). She graduated from high school, was a telecommunications operator in the Air Force from 1981 to 1988, and worked intermittently as a home health aide from 1996 until November 2004. (R. 66, 363-64). She had also worked as a cashier/server and as a light industrial worker. (R. 25).

The plaintiff lives at home with her mentally disabled son and prepares his food and helps him with his medication. (R. 80-81). The plaintiff also stated at her administrative hearing that she was 5'5", weighed 308 pounds, and her weight had remained within plus/minus ten pounds since her alleged onset date in 2002. (R. 368-69). Her typical day consists of bathing, attempting housework, paying bills, shopping for food, eating supper, reading, and listening to the radio. (R. 81).

## **DISCUSSION**

This Court has jurisdiction under 42 U.S.C. § 405(g) to hear claims based on the denial of Social Security benefits. This Court may set aside the

Commissioner's decision only if it is based upon legal error or his factual findings are not supported by substantial evidence. See 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d. Cir. 2008) (internal quotation marks omitted); Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

In order to establish disability under the Act, the plaintiff has the burden of demonstrating (1) that she was unable to engage in substantial gainful activity by reason of a physical or mental impairment that could have been expected to last for a continuous period of at least twelve months, and (2) that the existence of such impairment was demonstrated by evidence supported by medically acceptable clinical and laboratory techniques. See 42 U.S.C. § 1382c(a)(3); see also Barnhart v. Walton, 535 U.S. 212, 215 (2002). Moreover, eligibility for SSI based upon disability is conditioned upon compliance with the income and resource requirements of 42 U.S.C. §§ 1382a and 1382b.

The Commissioner has established a five-step sequential evaluation for the adjudication of disability claims:

> The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a severe impairment that limits her capacity to work. If the claimant has such an impairment, the Secretary next considers whether the

claimant has an impairment that is listed in Appendix 1 of the
regulations. When the claimant has such an impairment, the
Secretary will find the claimant disabled. However, if the claimant
does not have a listed impairment, the Secretary must determine,
under the fourth step, whether the claimant possesses the residual
functional capacity to perform her past relevant work. Finally, if the
claimant is unable to perform her past relevant work, the Secretary
determines whether the claimant is capable of performing any other
work.

See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); 20 C.F.R. § 416.920. The burden is on the claimant at the first four steps of the evaluation. Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986). If the claimant establishes that she is not capable of performing her past relevant work, then the burden shifts to the Commissioner who must then determine whether the claimant is capable of performing other work which exists in significant numbers in the national economy. Id.

The ALJ applied the five-step analysis in reaching his disability determination. 20 C.F.R. § 416.920. At the first step, the ALJ found that the plaintiff had not engaged in substantial gainful activity since her alleged onset of disability on January 1, 2003. (R. 17). At the second step, the ALJ found that the plaintiff's bilateral knee degeneration and obesity were severe impairments. (R. 18). Additionally, she had severe depression, beginning on June 14, 2006. Id. Her representative at her disability hearing conceded that her premature ovarian failure related to amenorrhea and hypertension were non-severe. (R. 19). The ALJ proceeded to step three of the sequential evaluation, and considered

whether plaintiff had an impairment, or combination of impairments, severe enough to meet or equal the criteria of one of any listed impairments that the Commissioner presumes are so severe as to preclude substantial gainful activity. See 20 C.F.R. § 416.920(d),(e). The ALJ found that the plaintiff's severe impairments did not meet or equal the criteria contained under the Listing of Impairments of 20 C.F.R. Part 404, Appendix 1, Subpart P. (R. 19).

Next, the ALJ considered the plaintiff's residual functional capacity (RFC) and determined that she could lift and carry up to ten pounds occasionally and twenty pounds frequently, sit up to six hours total and stand and/or walk about six hours total out of an eight hour workday. (R. 20). See 20 C.F.R. § 416.920(f). Furthermore, she needs to alternate between sitting and standing as needed for pain relief and can occasionally balance, stoop, kneel, crouch, and crawl. (R. 20). She can occasionally climb stairs, but never climb a ladder, and as of June 14, 2006, has the additional limitations of the ability to occasionally perform complex and detailed tasks and occasionally interact with the general public. Id. At step four, the ALJ concluded that the plaintiff was unable to perform any past relevant work. (R. 25).

At step five, the ALJ considered the plaintiff's RFC, age, education, and work experience, and, relying on the testimony of the VE, determined that there are jobs that exist that the plaintiff can perform. (R. 25). In particular, the ALJ determined that the plaintiff could perform the requirements of representative

occupations, such as a plastic molding machine operator. (R. 26). The ALJ concluded that because the plaintiff could perform work which exists in significant numbers in the national economy, she failed to meet the standard for being deemed disabled under the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995). See 20 C.F.R. § 416.920(e).

I. **The ALJ Properly Analyzed the Plaintiff's Obesity under Social Security Ruling 02-1p**

The plaintiff alleges that the ALJ did not properly analyze the plaintiff's obesity under Social Security Ruling ("SSR") 02-1p. SSR 02-1p requires the ALJ to consider a plaintiff's obesity in determining whether:

> 1. an individual has a medically determinable impairment;
> 2. an individual's impairment(s) is severe;
> 3. an individual's impairment(s) meets or equals the requirements of a listed impairment in the listings;
> 4. an individual's residual functional capacity prevents him or her from doing past relevant work or other work that exists in significant numbers in the national economy.

Contrary to the plaintiff's contention, the ALJ's analysis of the plaintiff's obesity was in accordance with SSR 02-1p. Although the ALJ did not specifically mention SSR 02-1p in his decision, the ALJ considered and factored in the plaintiff's obesity throughout his decision. (R. 15, 18, 19, 21-22, 23, 24).

7

The ALJ included the plaintiff's weight in his discussion of the plaintiff's medically determinable impairments, noting her height, weight fluctuations during the period at issue, and diagnosis with obesity. (R. 18). The ALJ also considered the plaintiff's obesity in determining whether she had a severe impairment and concluded that her obesity was a severe impairment. Id. However, the ALJ then determined that the plaintiff's weight, along with her other impairments, did not meet or equal the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19). The medical record did not show the plaintiff's obesity resulting in either difficulty ambulating effectively or any gross physical abnormalities. (R. 19, 124, 159-62, 195-228, 232-33).

Additionally, the plaintiff's obesity was factored into the ALJ's determination of her RFC. (R. 21-24). The ALJ considered the treatment notes from the Veterans' Administration medical centers, the opinion of Dr. Richard Eales, and the statements of Dr. Robert Scheig. The treatment notes from the Veterans' Administration medical centers did not indicate that plaintiff frequently sought treatment for her knee pain or that she had significant limitations due to obesity. (R. 21, 22, 124, 129, 130-32, 229). Dr. Eales, the consultative examiner, diagnosed plaintiff with obesity, but he concluded that the plaintiff's obesity did not result in severe limitations and found that the plaintiff had primarily normal examination findings. (R. 157-62). Dr. Eales also wrote that the plaintiff's

most significant complaint was joint pain but that her activities were not limited by those complaints, and that the plaintiff, perhaps, had mild limitations to standing and walking and should prudently avoid excessive stooping, kneeling, or crouching. (R. 162). Both of these treating sources factored in the plaintiff's obesity and support the ALJ's finding of an RFC that does not prevent the plaintiff from performing other work which exists in significant numbers in the national economy. The ALJ also factored in the opinion of Dr. Scheig, who assessed the plaintiff's condition in regards to her obesity, although, as discussed below, he did not give his opinion controlling weight. (R. 23-24).

      The ALJ thoroughly analyzed the medical records, which took into account plaintiff's obesity, when determining her RFC, and properly analyzed the plaintiff's obesity under SSR 02-1p. The ALJ appropriately considered the plaintiff's obesity at every step of the sequential evaluation process. (R. 15, 18, 19, 21, 22, 23, 24).

II. **ALJ Properly Chose not to Give Controlling Weight to the Assessments of treating Physician Dr. Scheig**

      The plaintiff next argues that the ALJ should have given controlling weight to the assessments of treating physician Dr. Scheig. The plaintiff's main contention is that Dr. Scheig's June 28, 2007 assessment form regarding the

9

impact of the plaintiff's obesity on her functionality states that she is disabled. (R. 241-44). Dr. Scheig's assessment form states that the plaintiff's obesity, combined with her other impairments, caused her to have pain and other symptoms that frequently interfered with her attention and concentration and that she was incapable of even low stress jobs. (R. 242). Dr. Scheig wrote that the plaintiff could only walk one block, sit for thirty minutes at a time, and stand for up to ten minutes at a time. Id. Dr. Scheig also found that she could sit for less than two hours and stand and/or walk for less than two hours total out of an eight hour workday. Id. Additionally, the plaintiff would need to take unscheduled breaks during an eight hour work day and keep her legs elevated during periods of prolonged sitting. (R. 243).

A treating source is entitled to controlling weight only when his opinions on the issue(s) of the nature and severity of a claimant's impairment(s) are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the rest of the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p; See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). While Dr. Scheig gave restrictive mental and physical assessments in regard to the plaintiff, his medical records show mostly normal physical and mental findings. (R. 238-39, 242). For example, the treatment notes from the Veterans' Administration medical centers showed minimal findings, such as a minimal limp when walking and no complaints at all in regard

10

to sitting. (R. 124, 129, 130-32, 201-02, 229, 232-33, 243, 279). Dr. Scheig noted that the plaintiff had a limited ability to walk but used no assistive devices. (R. 243).

Dr. Scheig's opinion is inconsistent with other substantial evidence in the medical record, including the findings of Dr. Eales. (R. 157-62). Dr. Eales' clinical examination revealed basically normal findings; the plaintiff was in no acute distress, walked without an assistive device, and her lower extremities were completely normal, except for mild reduction of flexion. Id.

Dr. Scheig's restrictive mental health assessment was also inconsistent with treatment notes from Veterans' Administration medical centers, which showed that the plaintiff had limited mental health complaints. (R. 218-19). For example, the plaintiff reported only a single episode of depression in March 2005, did not seek treatment again until May 2006, experienced improvement by September 2006, and remained stable through April 2007. (R. 23, 210-11, 218-19, 221, 279, 280, 288). Dr. Scheig's assessments of the plaintiff's mental health were entitled to little weight as he did not treat the plaintiff's mental health, and mental health was not within his area of expertise. 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). While the ALJ will consider a physician's opinion on a condition he did not treat, the opinion of another physician who has treated the plaintiff for the impairment would be entitled to

11

greater weight. 20 C.F.R. §§ 404.1527(d)(2)(ii), 416.927(d)(2)(ii).

In contrast to Dr. Scheig, Dr. Sargent, the plaintiff's treating psychiatrist, opined that, "[p]atient's depression and knee pain are reciprocally related. It is unclear whether she is disabled." (R. 280). Dr. Sargent recommended that the plaintiff return to normal activities, including work. (R. 221-22). The opinion of Dr. Sargent, who treated the plaintiff and whose area of expertise is mental health, was entitled to greater weight than the assessment of Dr. Scheig. Therefore, the ALJ properly chose not to give controlling weight to the assessments of treating physician Dr. Scheig.

### III. ALJ did not Err by not Recontacting Dr. Scheig

The plaintiff's final contention is that the ALJ erred by not recontacting Dr. Scheig for clarification regarding the doctor's obesity functional assessment. The duty to recontact a treating physician stems from the ALJ's affirmative duty to fully develop the administrative record. See Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1996). Moreover, this duty exists even where counsel represents a claimant. Id. According to 20 C.F.R.§416.912(e):

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

12

> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. . .

However, the plaintiff does not state what she believes is missing from the medical record. Here, the ALJ's obligation was to develop the plaintiff's complete medical history for at least the twelve months preceding the month in which she filed her application. 20 C.F.R. §§ 404.1512(d), 416.912(d). The plaintiff's medical sources were contacted before the administrative hearing, and their reports and findings were made part of the record. The medical record contained many treatment notes and functional assessments to support the ALJ's RFC determination. (R. 126, 138, 155, 169-81, 199, 195-228, 229, 238-39, 240, 241-44, 248-58, 279-80). At the hearing, the ALJ had Dr. Scheig's treatment notes and functional assessments before him. (R. 138, 199, 229, 238-39, 241-44). Additionally, Dr. Eales consultatively examined and reported on the plaintiff at the Commissioner's expense. (R. 157-62).

Where, as in the case at hand, "there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance

of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79, n.5 (2d Cir. 1999). See Veino v Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("While the opinions of a treating physician deserve special respect, they need not be given controlling weight where they are contradicted by other substantial evidence in the record."); Rebull v. Massanari, 240 F.Supp.2d 265, 272 (S.D.N.Y. 2002) (medical record that does not support a treating physician's opinion does not necessarily contain gaps or deficiencies in the evidence which require recontact). Therefore, the discrepancy between Dr. Scheig's opinion and the substantial evidence in the medical record to the contrary was properly resolved by the ALJ as an issue of credibility, rather than one of completeness of the administrative record.

The ALJ had substantial evidence to reach the conclusion that the plaintiff was not disabled, and therefore had no reason to recontact Dr. Scheig for additions to the medical record.

## CONCLUSION

For the reasons stated, the Court grants the Commissioner's motion for judgment on the pleadings. The Clerk of Court shall take all steps necessary to close the case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED: December 22, 2009